## No. 2386
## Second Circuit

## G. W. CLARK v. TREMONT LUMBER COMPANY

(November 4, 1925, Opinion and Decree)
(March 11, 1926, Rehearing Refused)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (I).**
A finding of the trial court in the Workmen's Compensation Act as to the amount of disability, being clearly correct, is affirmed.

2. **Louisiana Digest—Master and Servant —Par. 159.**
Section 8 (a) of Act 20 of 1914, as amended by Act 43 of 1922, provides for the payment of compensation during partial disability not exceeding three hundred weeks.

Appeal from Fifth Judicial District Court of Louisiana, Parish of Winn. Hon. F. E. Jones, Judge.

This case was originally tried in the District Court in May, 1924.

There was judgment rejecting plaintiff's demand and dismissing his suit, from which judgment he appealed. This court remanded the case for another trial. It was again tried in the District Court in April, 1925, when additional testimony was adduced by both sides. The last trial resulted in a judgment for the plaintiff. From this judgment defendant has appealed.

Judgment amended and affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

Theus, Grisham & Davis, of Monroe, attorneys for defendant, appellant.

ODOM, J. This case was originally tried in the District Court in May, 1924. There was judgment rejecting plaintiff's demand and dismissing his suit, from which judgment he appealed. This court remanded the case for another trial. It was again tried in the District Court in April, 1925, when additional testimony was adduced by both sides. The last trial resulted in a judgment for the plaintiff. From this judgment defendant has appealed.

Our learned brother of the District Court submitted a written opinion which we find in the record as follows:

"This case is brought under the Employers' Liability Act. The plaintiff seeks compensation from the defendant company on alleging that he sustained certain injuries while in the employ of the defendant company. This case was tried in the early part of 1924 in the Fifth District Court by Judge Reynolds. The suit was dismissed at plaintiff's cost. Plaintiff appealed and the Court of Appeal remanded the case for a new trial. The plaintiff was in the employ of the defendant company cutting logs in its forest for so· much per thousand feet, and had been in the employ of the said company for some time, when on July 2, 1923, he was injured by a dead tree falling and striking him. He and his partner, Frank Gunn, were cutting an oak tree and when it fell the dead oak tree standing behind the plaintiff fell and hit him. The tree hit the plaintiff on the back of the head, left shoulder and down his back, knocking him to the ground in an unconscious condition. The tree was of such magnitude that the partner, Frank Gunn, was unable to remove same and had to call some other laborers who were working nearby, and after some ten minutes the tree was removed from off the body of the plaintiff. The tree was about 30 feet long and between 12 and 15 inches in diameter at the place it hit the plaintiff. The plaintiff was carried home and remained in his bed for two or three weeks and was paid compensation in the sum of $33.50 by the defendant. The plaintiff then went back to work and worked a few days the last of July and a few days in August and September. He complained with his back and head continually and, according to the payroll, his ability to saw logs diminished instead of increasing from the last of July to the first of October.

There has been an array of doctors who have testified on each side in this case and the majority of them agree that the plaintiff is carrying a great load and is suffering and is unable to do manual labor that a man of his age should do. Doctors C. E. Hammer, S. C. Barrow, E. L. Sanderson, A. P. Crain, G. H. Cassity, M. L. Adair and O. C. Rigby all testified for the plaintiff and in their opinion plaintiff is suffering from the injury caused by the lick received from the falling tree. Doctors J. E. Walsworth, J. V. Adams, S. M. Brian, J. W. Scott, S. C. Fittz, Thomas Reagan, L. L. Cazenavette, Henry Daspit, Gray and Bennett testified for the defendant, and in the opinion of the majority of these doctors the plaintiff is suffering from some disability, and all agree that the lick that he received from the tree on the second day of July, 1923, is not the cause of the present disability of the plaintiff and has no connection with same. Dr. Barrow made an X-ray of the plaintiff's head and in reading the X-ray he and many of the other doctors for the plaintiff say the skull is pressed in just above the knot that is usually found on the back of the head, and that same was caused by some force, and that the skull is pressing upon the brain and causes the disability that the plaintiff is now suffering from. The doctors for the defendant in reading this X-ray say that this indenture on the skull of the plaintiff is a natural occurrence that is found in many persons and that it is natural, and that it was not caused by the blow, and a blow on the back of the head sufficient to cause such an indenture would frequently produce instant death. They all agree that the plaintiff had the transverse process of the fourth lumbar vertebra fractured, which produced considerable pain and suffering, and some of the doctors say this is entirely knitted together and that the plaintiff suffers no disability from this cause; other doctors disagree. The doctors for the defendant contend that the plaintiff is suffering from syphilis of the central nervous system. Some of the doctors of the plaintiff and defendant made a blood test of the plaintiff and also extracted spinal fluid and made that test. Each of these tests showed negative, which shows that the plaintiff was not suffering from syphilis, and the doctors for plaintiff deny that plaintiff is suffering from such cause, while the doctors for defendant admit that each of these tests showed negative, and from their showing the plaintiff is not suffering from syphilis; but from the history of the case, the complaints of the plaintiff, they are all of the opinion that he is suffering from syphilis of the central nervous system, and his disability is due to this cause. By careful reading of the testimony of the doctors in this case attention to the physical facts and facts that are testimony of the layman in his case for the conclusion of the same. The plaintiff, before he received the injury, worked continuously and made from two to five dollars a day, according to the grade of timber he was working in. There is no testimony that he ever made any complaints of any kind but made a regular saw hand, but immediately after going back to work after the injury he began to complain that his back and head were both hurting him and he was not able to or at least did not perform a full day's work. He was taken off the compensation three weeks after the injury and was forced to do something to support his wife and children. After this case was tried in 1924, and was on appeal to the Court of Appeal, he sought employment at a mill, east of Sikes, and had to quit on account of not being able to perform the work, and the manager of the mill stated that he was worth nothing as a laborer at his mill. He then sought a light job as fireman in Sikes at a planer mill and the evidence shows that he complained continuously of his head and back hurting him, and the plaintiff himself says that his back and head have given trouble ever since he was injured, and that he never suffered any before and that he is not able to do more than a half day's work on the farm now. The doctors all agree that he is suffering from a disability but disagree as to the cause of this disability. Some attribute the disability to the injury plaintiff received on the second day of July 1923, others disassociate his disability from the lick that he received in July and contend that it is caused from syphilis of the central nervous system. The opinion of the doctors who attribute his disability to the injury received on the second day of July, 1923, is borne out by the testimony of the laymen in the case, the facts and circumstances surrounding the case. There is no doubt but that a dead tree between 12 and 15 inches in diameter fell and struck the

plaintiff on his head, shoulders and in the small of the back and caused the fracture of the transverse process of the fourth lumbar vertebrae and was knocked unconscious, and before that date the plaintiff made no complaint and suffered no apparent disability, but since the accident he has continually complained and has suffered a disability. It is certain that when a tree of this size falls and hits a person on the head, shoulders and small of the back and fracturing a part of the spinal column, it will affect the entire system, and the court is of the opinion that the plaintiff's disability was primarily caused by the injury that he received on the second day of July, 1923, and is entitled to compensation.

"The extent of the disability is hard to determine. The plaintiff has been hurt now over two years and the disability still exists, and the doctors for the plaintiff say that his disability will be permanent. The plaintiff has been able to do some work and says himself that he is able to do about one-half work and the court will fix the disability at 50 per cent.

"The plaintiff was cutting logs by the thousand. Some days he made as low as two dollars and other days between five and six dollars. The week before he made an average of nearly three dollars and sixty cents, and a fair estimate of his day's labor is fixed at three dollars and sixty cents. His disability being 50 per cent, he is entitled to recover 60 per cent of one-half of three dollars and sixty cents per day. That is, the plaintiff is entitled to recover one dollar and eight cents per day during disability. The court finds that he suffered total disability for a period of three weeks and is entitled to receive 60 per cent of the wages for three weeks and that his disability thereafter is partial but permanent and that he is entitled to receive thereafter compensation of one dollar and eight cents per day not to exceed four hundred weeks in all.

"The plaintiff did not receive any medical attention except a call or two from Dr. Brian. He was confined to his bed and had to be attended for a part of three weeks, and after getting up and trying to work he was advised to go to the Charity Hospital in New Orleans, where he received attention for six weeks. The defendant under the circumstances in this case should have sent the plaintiff to some hospital to be examined and treated and the plaintiff is entitled to recover two hundred and fifty dollars medical bill which the company should have provided. For these reasons there should be judgment for the plaintiff according to the above and foregoing."

We think the district judge has correctly stated the case and the facts and has reached a correct conclusion, except as to the period of time during which compensation should be paid.

The suit was brought under Act 20 of 1914, as amended by Act 43 of 1922. The act as amended provides that for injury producing partial disability to do work of a reasonable character the compensation shall be 60 per cent of the difference between wages which the injured party was earning at the time of the injury and what he is able to earn thereafter during the period of disability, not beyond 300 weeks.

The lower court found, correctly, we think, that plaintiff is partially disabled, and found that he is able to earn one-half as much as he was earning at the time of his injury, or $1.80 per day, and allowed him compensation at 60 per cent of this amount during his disability, not beyond 400 weeks. That was error.

. The compensation is due during disability not beyond 300 weeks.

The judgment appealed from should therefore be amended accordingly.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to allow compensation to plaintiff during the period of his disability, not, however, beyond 300 weeks, and as thus amended it is affirmed. The costs of the appeal to be paid by plaintiff; all other costs to be paid by defendant.